IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ERNEST CRUMP, JR., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Civ. No. 04-329-SLR |
| | ) |
| ROBERT MAY, THOMAS RYGIL, VINCE | ) |
| BIANCA, and STAN TAYLOR, | ) |
| | ) |
|     Defendants. | ) |

Ernest Crump, Jr., Delaware Correctional Center, Smyrna, Delaware. Pro se Plaintiff.

Ophelia M. Waters, Deputy Attorney General, State of Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants Robert May, Thomas Rygil, Vince Bianca, and Stan Taylor.

**MEMORANDUM OPINION**

Dated: March 14, 2006
Wilmington, Delaware

*[signature]*
ROBINSON, Chief Judge

## I.   INTRODUCTION

On May 21, 2004, Ernest A. Crump, Jr., a pro se plaintiff proceeding in forma pauperis ("plaintiff"), filed the present action pursuant to 42 U.S.C. § 1983 alleging infringement of his First, Fourth, and Eighth Amendment rights by Lieutenant Robert May, Corporal Thomas Rygil, Warden Vince Bianca, and Commissioner Stan Taylor ("defendants").[1]  (D.I. 2 at III, IV)  Plaintiff, a prisoner at the Delaware Correctional Center ("DCC"), requests compensatory relief for property taken by the staff at the Morris Community Correction Center/Kent Work Release Center ("MCCC/KWRC") as well as punitive damages for "blatant abuse of power."  (Id. at III, V)  Defendants deny liability based on plaintiff's alleged failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) and, alternatively, the doctrine of sovereign immunity granted by the Eleventh Amendment.  (D.I. 22 at ¶¶ 4, 24-28)  The court has jurisdiction over the present suit pursuant to 28 U.S.C. § 1331.  Presently before the court is defendants' motion to dismiss.[2]  (D.I. 21)  The court grants said motion based on

---

[1] Plaintiff misspelled defendant Bianca's and defendant Rygil's names throughout his complaint and subsequent documents. The correct spellings are Bianco and Rygiel.

[2] Defendants filed their motion to dismiss on September 12, 2005.  A briefing schedule was established on October 3, 2005 requiring that plaintiff file his answer brief no later than October 31, 2005.  At present, the court has yet to receive plaintiff's answer.

the court's finding that plaintiff failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).

## II. BACKGROUND

Plaintiff was on work release status at MCCC/KWRC[3] on August 29, 2002 when he escaped by leaving the grounds without permission.[4] (D.I. 2 at III and IV) After the MCCC/KWRC Escape Apprehension Team located plaintiff, he was returned to the facility, placed in a holding cell overnight and prepared for administrative transfer to the DCC. The following morning plaintiff was ordered by defendant Rygiel, in the presence of defendant May, to remove his jewelry, street clothes and street shoes.[5] (Id. at IV) Plaintiff was thereafter transferred to the DCC. (Id.)

After his transfer, plaintiff twice wrote to defendant

---

[3] The work release program is a Level IV Halfway House. Pursuant to the rules of the MCCC/KWRC, plaintiff was required to inform MCCC/KWRC staff of his whereabouts and activities twenty four hours a day, seven days a week. (D.I.22 at ex. 1) Additionally, plaintiff was required to remain within one hour's contact of the MCCC/KWRC at all times. (Id. at ex. 3) Failing to meet these conditions can, and in plaintiff's case did, result in his being placed on escape status. (Id. at ex. A, ¶8; ex. 3)

[4] On February 6, 2003, plaintiff pled guilty to the charge of escape based on the August 29, 2002 episode. (D.I. 22 at ¶3)

[5] Defendant Rygiel denies taking these items from plaintiff. He does state that "upon information and belief detainee and offender personal property is sent to the inmate property room upon entry to a DOC facility." (D.I. 25 at ¶ 9) Similarly, defendant May denies any knowledge of the articles taken. (D.I. 24 at ¶9)

2

Bianco requesting that his personal property - specifically his toiletries, religious materials including a Koran, Kufi, and Bible, legal documents, jewelry and clothes - be sent to the DCC.[6]  (Id. at ex. C-D)  The property was never transported to the DCC.  On September 5, 2002, plaintiff gave written authorization for a friend to pick up his paycheck, consistent with the MCC Orientation Manual which provides that if an inmate is

> placed on escape status, the [MCCC] is not
> responsible for [] personal belongings.  If
> any personal items are left here and
> recovered, they may be donated to a local
> charity.  Also, if [inmate] is returned to
> higher security, MCCC is not responsible
> for any lost or stolen property.  However,
> any recovered items of a returnee will be
> kept for seven(7) days for [inmate] to have
> someone pick up the items.  Any items not
> picked up within seven (7) days may be
> donated to a local charity.

(D.I. 22, exs. A-2, A-5)[7]  The written authorization mentioned no other property.  (Id. ex. A-5)

Notwithstanding the two letters allegedly sent to defendant Bianco, plaintiff admits that he did not utilize the Inmate

---

[6] Although plaintiff has attached these letters (D.I. 2, ex. C-D), defendant Bianco does not recall receiving the correspondence from plaintiff.  (D.I. at ¶9)

[7] Plaintiff was aware of the policy because he had signed the Resident Signature Form, which stated that, "I, Crump, Ernest, having received a copy of the Orientation Manual and having had the rules and procedures explained to me I agree to abide by them."  (D.I. 2, ex. A-3)

3

Grievance Procedure ("IGP")[8] as a means of retrieving his personal property, claiming that he "was transferred to another prison before [he] could file a grievance." (D.I. 2 at II-D)

### III. STANDARD OF REVIEW

Because defendants have referred to matters outside the pleadings, their motion to dismiss shall be treated as a motion for summary judgment and disposed of as provided in Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact is in dispute. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."

---

[8] The purpose of the IGP is to provide "a timely, effective means of having issues brought to the attention of those who can offer administrative remedies before court petitions can be filed." (D.I. 22, ex. B, II) Accordingly, all inmates within the custody of the State of Delaware Bureau of Prisons are entitled to use the IGP, regardless of their physical condition, security, or administrative status. (Id., ex. B, V-2)

4

Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995)(internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment. There must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In other words, the court must grant summary judgment if the party responding to the motion fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. Omnipoint Comm. Enters., L.P. v. Newtown Township, 219 F.3d 240, 242 (3d Cir. 2000) (quoting Celotex, 477 U.S. at 323).

5

**IV. DISCUSSION**

Plaintiff makes three claims in this § 1983 action. His first and second claim stem from defendants' actions after he was apprehended and returned to the MCCC/KWRC. Plaintiff argues that his Fourth Amendment right to be free from unwarranted searches and seizures was violated when he was ordered to strip down to his underwear and change into the DCC uniform. (D.I. 2 at IV) Likewise, he contends that defendants deprived him of personal property in contravention of the Eighth Amendment when his property was taken but not sent to the DCC after his administrative transfer. (Id.) In his third claim, plaintiff asserts that, by failing to send his Koran and Kufi, defendants violated his First Amendment right to freely exercise his religion. (Id.)

**A.   Plaintiff's Failure to Exhaust Administrative Remedies**

Plaintiff's claims under the First, Fourth, and Eighth Amendments cannot stand because he failed to exhaust his administrative remedies. Inmates wishing to bring a civil action with respect to prison conditions must comply with the Prison Reform Litigation Act. Under the Act, prisoners must properly exhaust all available administrative remedies prior to filing suit. See 42 U.S.C. § 1997e(a).

Congress has defined a "civil action with respect to prison conditions" as a "civil proceeding arising under Federal law with

6

respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prisons . . .." 18 U.S.C. § 3626g(2). The Third Circuit has interpreted "conditions of confinement" to relate to "the environment in which prisoners live, the physical conditions of that environment, and the nature of the services provided therein." Booth v. Churner, 206 F.3d 289, 294 (3d Cir. 2000).

The Third Circuit has also construed 1997e(a)'s exhaustion language to include a procedural default component. Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004). Not only does the exhaustion requirement lessen the burden on federal courts by erecting a barrier to frivolous prisoner lawsuits, it advances Congress' goals of returning control of the inmate grievance process to prison administrators, and encourages development of an administrative record, and perhaps settlements, within the inmate grievance process. Id. As a result, proper exhaustion of remedies requires that inmates follow the procedural requirements of the prison grievance system. Id. at 231. Further, inmates must do so even though the administrative process will not grant the relief they ultimately seek. Booth v. Churner, 532 U.S. 731 (2001). The genesis of plaintiff's claims at bar stem from the actions of government officials while plaintiff was incarcerated at MCCC/KWRC and the DCC, therefore, 42 U.S.C. § 1997e(a) applies and plaintiff was required to exhaust the requirements of

7

Delaware's IGP.

Delaware's IGP creates a three-step grievance process with two levels of appeal. (D.I. 22, ex. B at V) To exhaust all available administrative remedies, a prisoner must complete all stages of review and take part in the appeals process. The procedure also provides for an emergency grievance, defined as "an issue that would concern matters which under regular time limits would subject the inmate to a substantial risk of personal, physical[,] or psychological harm." (Id., ex. B at V) Unlike the standard IGP, in which decisions are made within thirty days of receiving the grievance, an emergency grievance is addressed immediately by the Warden or the Warden's designee with a decision reached made within one calendar day. (Id.)

With respect to plaintiff's claims arising out of his escape and subsequent transfer to the DCC, plaintiff admits that he failed to file a grievance pursuant to the IGP prior to filing suit. (D.I. 2 at II-D) Plaintiff argues that he was transferred to another prison before he could file a grievance but that he complained to defendant Bianco. (Id.) Plaintiff's defense is unavailing for two reasons. According to the IGP, a prisoner has seven calendar days to submit an initial grievance. (D.I. 22, ex. B at V) Even if plaintiff was unable to file a grievance on August 29 or August 30, 2002, he still had five days to file a grievance at the DCC. Plaintiff has yet to offer any evidence

8

indicating that a grievance was filed or his inability to do so. Additionally, if the court allows plaintiff's complaint to satisfy the requirements of 42 U.S.C. § 1997e(a), the court actively works against Congress' goals of returning control of the inmate grievance process to prison administrators, encouraging development of an administrative record, and perhaps settlements within the inmate grievance process, and reducing the burden on the federal courts by preventing frivolous lawsuits. Furthermore, the court also declines to accept the letters plaintiff wrote to defendant Bianco as a substitute for filing a grievance since doing so is also contrary to Congressional objectives.

Based on plaintiff's failure to exhaust administrative remedies, the court will not address plaintiff's other claims or defendants' sovereign immunity defense.[9] Accordingly, the court

---

[9] On October 10, 2003, plaintiff filed an inmate grievance involving a dispute with the area Sergeant and plaintiff about whether the Chapel called for plaintiff's attendance on a specific day and time. (D.I. 22, ex. C) It is unclear to the court whether plaintiff is pursuing this claim; however, even if it were being pursued, it would be dismissed based on plaintiff's failure to exhaust administrative remedies. While he did file a grievance complaining that he was never called for Chapel, the IGP requires that inmates complete all stages of review and take part in the appeals process. (D.I. 22, ex B at V) Plaintiff only completed the first stage of the grievance procedure, thereby not exhausting his administrative remedies with respect to this potential claim.

9

grants defendants' summary judgment motion.[10]

## V.   CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted.  An appropriate order shall issue.

---

[10] Even if plaintiff had exhausted his administrative remedies, his Eighth Amendment lost property claim would not withstand a summary judgment motion because there is no cause of action under § 1983 if a post-deprivation state remedy exists. Since plaintiff can pursue this claim in a state court action, there is no cognizable § 1983 claim.  See Nicholson v. Carroll, 390 F. Supp. 2d 429, 435 (D.Del 2005).

10