IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ERNEST CRUMP, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 04-329-SLR |
| | ) | |
| ROBERT MAY, THOMAS RYGIL, VINCE | ) | |
| BIANCA, and STAN TAYLOR, | ) | |
| | ) | |
| Defendants. | ) | |

---

Ernest Crump, Jr., Delaware Correctional Center, Smyrna, Delaware.  Pro se Plaintiff.

Ophelia M. Waters, Deputy Attorney General, State of Delaware Department of Justice, Wilmington, Delaware.  Counsel for Defendants Robert May, Thomas Rygil, Vince Bianca, and Stan Taylor.

---

**MEMORANDUM OPINION**

Dated:  March 14, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I.   INTRODUCTION

On May 21, 2004, Ernest A. Crump, Jr., a pro se plaintiff
proceeding in forma pauperis ("plaintiff"), filed the present
action pursuant to 42 U.S.C. § 1983 alleging infringement of his
First, Fourth, and Eighth Amendment rights by Lieutenant Robert
May, Corporal Thomas Rygil, Warden Vince Bianca, and Commissioner
Stan Taylor ("defendants").[1]   (D.I. 2 at III, IV)   Plaintiff, a
prisoner at the Delaware Correctional Center ("DCC"), requests
compensatory relief for property taken by the staff at the Morris
Community Correction Center/Kent Work Release Center
("MCCC/KWRC") as well as punitive damages for "blatant abuse of
power."   (Id. at III, V)   Defendants deny liability based on
plaintiff's alleged failure to exhaust administrative remedies
pursuant to the Prison Litigation Reform Act, 42 U.S.C. §
1997e(a) and, alternatively, the doctrine of sovereign immunity
granted by the Eleventh Amendment.   (D.I. 22 at ¶¶ 4, 24-28)   The
court has jurisdiction over the present suit pursuant to 28
U.S.C. § 1331.   Presently before the court is defendants' motion
to dismiss.[2]   (D.I. 21)   The court grants said motion based on

___

[1] Plaintiff misspelled defendant Bianca's and defendant
Rygil's names throughout his complaint and subsequent documents.
The correct spellings are Bianco and Rygiel.

[2] Defendants filed their motion to dismiss on September 12,
2005.   A briefing schedule was established on October 3, 2005
requiring that plaintiff file his answer brief no later than
October 31, 2005.   At present, the court has yet to receive
plaintiff's answer.

the court's finding that plaintiff failed to exhaust
administrative remedies as required by 42 U.S.C. § 1997e(a).

## II. BACKGROUND

Plaintiff was on work release status at MCCC/KWRC[3] on August
29, 2002 when he escaped by leaving the grounds without
permission.[4] (D.I. 2 at III and IV) After the MCCC/KWRC Escape
Apprehension Team located plaintiff, he was returned to the
facility, placed in a holding cell overnight and prepared for
administrative transfer to the DCC. The following morning
plaintiff was ordered by defendant Rygiel, in the presence of
defendant May, to remove his jewelry, street clothes and street
shoes.[5] (Id. at IV) Plaintiff was thereafter transferred to the
DCC. (Id.)

After his transfer, plaintiff twice wrote to defendant

---

[3] The work release program is a Level IV Halfway House.
Pursuant to the rules of the MCCC/KWRC, plaintiff was required to
inform MCCC/KWRC staff of his whereabouts and activities twenty
four hours a day, seven days a week. (D.I.22 at ex. 1)
Additionally, plaintiff was required to remain within one hour's
contact of the MCCC/KWRC at all times. (Id. at ex. 3) Failing
to meet these conditions can, and in plaintiff's case did, result
in his being placed on escape status. (Id. at ex. A, ¶8; ex. 3)

[4] On February 6, 2003, plaintiff pled guilty to the charge
of escape based on the August 29, 2002 episode. (D.I. 22 at ¶3)

[5] Defendant Rygiel denies taking these items from plaintiff.
He does state that "upon information and belief detainee and
offender personal property is sent to the inmate property room
upon entry to a DOC facility." (D.I. 25 at ¶ 9) Similarly,
defendant May denies any knowledge of the articles taken. (D.I.
24 at ¶9)

2

Bianco requesting that his personal property - specifically his toiletries, religious materials including a Koran, Kufi, and Bible, legal documents, jewelry and clothes - be sent to the DCC.[6]  (Id. at ex. C-D)  The property was never transported to the DCC.  On September 5, 2002, plaintiff gave written authorization for a friend to pick up his paycheck, consistent with the MCC Orientation Manual which provides that if an inmate is

> placed on escape status, the [MCCC] is not responsible for [] personal belongings.  If any personal items are left here and recovered, they may be donated to a local charity.  Also, if [inmate] is returned to higher security, MCCC is not responsible for any lost or stolen property.  However, any recovered items of a returnee will be kept for seven(7) days for [inmate] to have someone pick up the items.  Any items not picked up within seven (7) days may be donated to a local charity.

(D.I. 22, exs. A-2, A-5)[7]  The written authorization mentioned no other property.  (Id. ex. A-5)

Notwithstanding the two letters allegedly sent to defendant Bianco, plaintiff admits that he did not utilize the Inmate

---

[6] Although plaintiff has attached these letters (D.I. 2, ex. C-D), defendant Bianco does not recall receiving the correspondence from plaintiff.  (D.I. at ¶9)

[7] Plaintiff was aware of the policy because he had signed the Resident Signature Form, which stated that, "I, Crump, Ernest, having received a copy of the Orientation Manual and having had the rules and procedures explained to me I agree to abide by them."  (D.I. 2, ex. A-3)

3

Grievance Procedure ("IGP")[8] as a means of retrieving his
personal property, claiming that he "was transferred to another
prison before [he] could file a grievance."  (D.I. 2 at II-D)

## III. STANDARD OF REVIEW

Because defendants have referred to matters outside the
pleadings, their motion to dismiss shall be treated as a motion
for summary judgment and disposed of as provided in Rule 56 of
the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12 (b)
(6).  A court shall grant summary judgment only if "the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  The moving party bears the burden of
proving that no genuine issue of material fact is in dispute.
Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586
n.10 (1986).  "Facts that could alter the outcome are 'material,'
and disputes are 'genuine' if evidence exists from which a
rational person could conclude that the position of the person
with the burden of proof on the disputed issue is correct."

---

[8] The purpose of the IGP is to provide "a timely, effective
means of having issues brought to the attention of those who can
offer administrative remedies before court petitions can be
filed."  (D.I. 22, ex. B, II)  Accordingly, all inmates within
the custody of the State of Delaware Bureau of Prisons are
entitled to use the IGP, regardless of their physical condition,
security, or administrative status.  (Id., ex. B, V-2)

4

Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995)(internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment. There must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In other words, the court must grant summary judgment if the party responding to the motion fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. Omnipoint Comm. Enters., L.P. v. Newtown Township, 219 F.3d 240, 242 (3d Cir. 2000) (quoting Celotex, 477 U.S. at 323).

## IV.   DISCUSSION

Plaintiff makes three claims in this § 1983 action.   His first and second claim stem from defendants' actions after he was apprehended and returned to the MCCC/KWRC.   Plaintiff argues that his Fourth Amendment right to be free from unwarranted searches and seizures was violated when he was ordered to strip down to his underwear and change into the DCC uniform.   (D.I. 2 at IV) Likewise, he contends that defendants deprived him of personal property in contravention of the Eighth Amendment when his property was taken but not sent to the DCC after his administrative transfer.   (Id.)   In his third claim, plaintiff asserts that, by failing to send his Koran and Kufi, defendants violated his First Amendment right to freely exercise his religion.   (Id.)

### A.   Plaintiff's Failure to Exhaust Administrative Remedies

Plaintiff's claims under the First, Fourth, and Eighth Amendments cannot stand because he failed to exhaust his administrative remedies.   Inmates wishing to bring a civil action with respect to prison conditions must comply with the Prison Reform Litigation Act.   Under the Act, prisoners must properly exhaust all available administrative remedies prior to filing suit.   See 42 U.S.C. § 1997e(a).

Congress has defined a "civil action with respect to prison conditions" as a "civil proceeding arising under Federal law with

6

respect to the conditions of confinement or the effects of
actions by government officials on the lives of persons confined
in prisons . . .." 18 U.S.C. § 3626g(2). The Third Circuit has
interpreted "conditions of confinement" to relate to "the
environment in which prisoners live, the physical conditions of
that environment, and the nature of the services provided
therein." Booth v. Churner, 206 F.3d 289, 294 (3d Cir. 2000).

The Third Circuit has also construed 1997e(a)'s exhaustion
language to include a procedural default component. Spruill v.
Gillis, 372 F.3d 218, 230 (3d Cir. 2004). Not only does the
exhaustion requirement lessen the burden on federal courts by
erecting a barrier to frivolous prisoner lawsuits, it advances
Congress' goals of returning control of the inmate grievance
process to prison administrators, and encourages development of
an administrative record, and perhaps settlements, within the
inmate grievance process. Id. As a result, proper exhaustion of
remedies requires that inmates follow the procedural requirements
of the prison grievance system. Id. at 231. Further, inmates
must do so even though the administrative process will not grant
the relief they ultimately seek. Booth v. Churner, 532 U.S. 731
(2001). The genesis of plaintiff's claims at bar stem from the
actions of government officials while plaintiff was incarcerated
at MCCC/KWRC and the DCC, therefore, 42 U.S.C. § 1997e(a) applies
and plaintiff was required to exhaust the requirements of

7

Delaware's IGP.

Delaware's IGP creates a three-step grievance process with
two levels of appeal. (D.I. 22, ex. B at V) To exhaust all
available administrative remedies, a prisoner must complete all
stages of review and take part in the appeals process. The
procedure also provides for an emergency grievance, defined as
"an issue that would concern matters which under regular time
limits would subject the inmate to a substantial risk of
personal, physical[,] or psychological harm." (Id., ex. B at V)
Unlike the standard IGP, in which decisions are made within
thirty days of receiving the grievance, an emergency grievance is
addressed immediately by the Warden or the Warden's designee with
a decision reached made within one calendar day. (Id.)

With respect to plaintiff's claims arising out of his escape
and subsequent transfer to the DCC, plaintiff admits that he
failed to file a grievance pursuant to the IGP prior to filing
suit. (D.I. 2 at II-D) Plaintiff argues that he was transferred
to another prison before he could file a grievance but that he
complained to defendant Bianco. (Id.) Plaintiff's defense is
unavailing for two reasons. According to the IGP, a prisoner has
seven calendar days to submit an initial grievance. (D.I. 22,
ex. B at V) Even if plaintiff was unable to file a grievance on
August 29 or August 30, 2002, he still had five days to file a
grievance at the DCC. Plaintiff has yet to offer any evidence

8

indicating that a grievance was filed or his inability to do so.
Additionally, if the court allows plaintiff's complaint to
satisfy the requirements of 42 U.S.C. § 1997e(a), the court
actively works against Congress' goals of returning control of
the inmate grievance process to prison administrators,
encouraging development of an administrative record, and perhaps
settlements within the inmate grievance process, and reducing the
burden on the federal courts by preventing frivolous lawsuits.
Furthermore, the court also declines to accept the letters
plaintiff wrote to defendant Bianco as a substitute for filing a
grievance since doing so is also contrary to Congressional
objectives.

     Based on plaintiff's failure to exhaust administrative
remedies, the court will not address plaintiff's other claims or
defendants' sovereign immunity defense.⁹  Accordingly, the court

---

⁹ On October 10, 2003, plaintiff filed an inmate grievance
involving a dispute with the area Sergeant and plaintiff about
whether the Chapel called for plaintiff's attendance on a
specific day and time.  (D.I. 22, ex. C)  It is unclear to the
court whether plaintiff is pursuing this claim; however, even if
it were being pursued, it would be dismissed based on plaintiff's
failure to exhaust administrative remedies.  While he did file a
grievance complaining that he was never called for Chapel, the
IGP requires that inmates complete all stages of review and take
part in the appeals process.  (D.I. 22, ex B at V)  Plaintiff
only completed the first stage of the grievance procedure,
thereby not exhausting his administrative remedies with respect
to this potential claim.

9

grants defendants' summary judgment motion.[10]

## V.   CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted. An appropriate order shall issue.

---

[10] Even if plaintiff had exhausted his administrative remedies, his Eighth Amendment lost property claim would not withstand a summary judgment motion because there is no cause of action under § 1983 if a post-deprivation state remedy exists. Since plaintiff can pursue this claim in a state court action, there is no cognizable § 1983 claim. See Nicholson v. Carroll, 390 F. Supp. 2d 429, 435 (D.Del 2005).

10